## ANNA LANCE v. EDWARD GORMAN ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY.

Argued February 19, 1890—Decided October 6, 1890.
Re-argument refused November 10, 1890.
[To be reported.]

1. Though a judgment creditor is not a purchaser within the recording acts, a purchaser of land under his judgment has all the qualities of

Statement of Facts.

one, by relation, from the date of the lien, and his title is paramount to all conveyances and encumbrances subsequent thereto: Woods v. Farmere, 7 W. 382.

2. Wherefore, it is incumbent on one who alleges a resulting trust in his favor, antedating the entry of the judgment under which the sheriff has sold the legal title to land, to show that the purchaser at the sheriff's sale had notice, actual or constructive, of the equitable title or resulting trust, at the time he bought.

3. The possession of property, in person or by tenants, is notice of title in every form; but, when one who is in possession has placed on record a particular title, consistent with that possession, the registry thereof will restrict the generality of notice from possession, narrowing it to specific notice of that particular title.*

(a) Land paid for with money of a wife, was conveyed by mistake to her husband. After the entry of judgments against him, the husband and wife .conveyed it to a third person, who then conveyed to the wife. These conveyances were dated and recorded the same day, and purported to be made for " $100 and divers other good considerations."

(b) At a sheriff's sale of the land as the property of the husband, subsequently held under the judgments aforesaid, the wife gave written notice to bidders that the land was her sole and separate property, and that the sale would not pass title. Her tenants were in possession at and before the date of the sale:

4. The written notice being silent as to the fact that the wife's title antedated the judgments, and both that notice and the possession of the wife's tenants being consistent with and referable to the recorded deed to the wife, neither of them was sufficient to put purchasers on inquiry as to a prior equitable title.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 54 January Term 1890, Sup. Ct.; court below, No. 194 May Term 1881, C. P.

On April 4, 1881, J. C. Lance and Anna Lance, his wife, in right of said wife, brought ejectment against Edward Gorman and Mary Gorman for a lot of ground in Mahanoy City. The defendants pleaded not guilty.

At the second trial on March 25, 1889, J. C. Lance being then dead, the jury were sworn as to Anna Lance alone, and the following facts were shown:

In 1872 Jacob Newkirk was the owner of the premises in controversy. On October 23, 1872, he conveyed them to J. C.

See Anderson v. Brinser, 129 Pa. 376.

Lance, the consideration named in the deed being $7,000. That deed was duly recorded on December 5, 1872. On December 4, 1872, two judgments in favor of C. M. Swayze and against J. C. Lance and J. C. Lance, Jr., for $579.58 and $500 respectively, were entered by confession. By deed executed in August, 1874, J. C. Lance and Anna, his wife, conveyed the lot of ground aforesaid to David H. Klingerman for the expressed consideration of "$100 and divers other good and sufficient considerations them thereunto moving;" and by a deed bearing the same date and expressing the same consideration, Klingerman conveyed the same property to Anna Lance. Each of these deeds was acknowledged August 24, 1874, and placed on record August 31, 1874. Subsequent thereto a judgment for $632.10 was recovered against J. C. Lance by J. F. Schreiber. Other judgments were recovered against Lance at and about the time of the conveyance to his wife, some prior and some subsequent thereto, but all based upon claims in existence at the date of that conveyance.

On May 27, 1876, by virtue of executions issued upon the three judgments first above mentioned, the sheriff sold said lot of ground to the defendant, Mary Gorman, who afterwards received a sheriff's deed therefor and entered into possession. At said sheriff's sale a notice was read, signed by the attorney of Mrs. Lance, which was as follows :

"To Purchasers and Bidders :

"Take notice, that the following property, taken in execution and advertised to be sold this day, bounded and described as follows : [Here follows a description of the property advertised,] as the property of Joel C. Lance, is not the property of Joel C. Lance as whose property it is advertised to be sold, but is the sole and separate property of Anna Lance, and any person buying the same at this sale will acquire no title; May 27, 1876."

At and prior to the date of the sheriff's sale, the property was in possession of tenants of the plaintiff, Anna Lance.

Testimony for the plaintiff tended to show that in December, 1863, Anna Lance by articles of agreement in her own name, purchased a farm from one Boyer, and that on August 20, 1864, she received a deed from him therefor; that the purchase-money of this farm was paid with funds given to her by her

father; that, in 1866, the Boyer farm was sold for $3,600 by Mrs. Lance and her husband, and the purchase-money received for it was invested in the purchase of another farm from Andrew Robertson and one Beddel, the remainder of its price being paid out of the proceeds of crops and timber taken from the land, and a loan for $1,000 made on the credit of the farm; that the deed from Beddel and Robertson was to have been made to Mrs. Lance, but by mistake it was made to her husband; that the correction of the mistake, by the making of a deed to the wife, was talked of after the mistake was discovered, but it was not made; that the Beddel and Robertson farm was finally traded to Jacob Newkirk for the property in controversy in this suit, and by another mistake the deed from Newkirk above mentioned was made to J. C. Lance instead of to Anna Lance; and that the conveyance to Klingerman, and his conveyance to Mrs. Lance, were made for the purpose of correcting this mistake and executing the resulting trust under which J. C. Lance had held the title for the use and benefit of his wife. These conveyances, however, contained no reference to any equitable title or prior right in Mrs. Lance.

Portions of the plaintiff's allegations were controverted, and various questions were raised regarding the alleged trust in the husband for the benefit of the wife, and the proof thereof, which it is not necessary to refer to, in view of the ground upon which the decision of the Supreme Court was based.

At the close of the testimony the court, PERSHING, P. J., charged the jury in part as follows:

It is claimed here that this conveyance to Mrs. Lance was simply putting the title in her name, where it rightfully belonged; that at no time, during the progress of the transactions in evidence before you, did the Boyer farm, or the Beddel farm, or the property in Mahanoy City, lot No. 10, really belong to Joel C. Lance; that it was the property of his wife, paid for by her means. If you find the facts to be so, then she would be entitled to your verdict. Her deed, you will observe, was put upon record in August, 1874. That was notice to all the world of the title she claimed. The very object in putting a deed upon record is to give notice. The purchase at sheriff's sale was not made until May, 1876.

Charge of Court below.

The Supreme Court has held that it is the duty of every man, who purchases at sheriff's sale, to examine the record and ascertain how the title stands. The purchaser simply buys the title that is put up for sale. The defendants here bought the title of Joel C. Lance. If he had any title, they took it; if he had no title, they bought nothing. Under the maxim of the law, caveat emptor, the purchaser must take notice. Her deed was upon record from August 31, 1874, until May 27, 1876, when the sale took place, open to the inspection of every man who was disposed to purchase, or had any interest in the property. In addition to that, there is evidence here that a notice was read to the public on the day of the sale, warning persons that bidders would take no title by their purchase; that the property did not belong to Joel C. Lance, but belonged to Anna Lance.

A number of points have been submitted, and I will now proceed to answer them.

The defendants have submitted several points:

1. The defendants having shown the title to the premises in controversy in Joel C. Lance, December 4, 1872, the time when C. M. Swayze entered his two judgments against the said Joel C. Lance, executions thereon, a sale by the sheriff thereunder, an acknowledgment and delivery of a deed to Mary Gorman, the defendant, the verdict must be for the defendants, unless the jury find, from the evidence in the cause, that a trust resulted in favor of Anna Lance, the plaintiff, by reason of payment of the purchase money.

Answer: This we affirm.

2. In order to sustain effectually a resulting trust arising from the alleged payment of the purchase money with which an estate was bought, and to overthrow the legal title, fortified by all the solemnities which attend formal conveyances under seal, it is necessary that the proof should be full, clear and convincing. The evidence must go distinctly to the fact of payment. Slight and equivocal facts which raise mere suspicions and doubts are altogether inadequate. A man is not to be dislodged from the security in which he is entrenched by the ordinary muniments of title, and dispossessed of his property, by mere gossip and an aggregation of immaterial and inconclusive facts, none of which prove decisively or satisfac torily the issue which is made against him.

Answer: This is quoting the language of some of the cases, and as a rule of law, we affirm it.

3. If the jury find that there was no resulting trust in favor of Anna Lance, the plaintiff, then by her deed of August 23, 1874, she took title to the land in controversy, subject to the lien of the Swayze judgments, and her title was divested by the sheriff's sale under the Swayze judgments, and the verdict must be for the defendants.

Answer: We affirm that, if you find the facts to be as stated.

8. Under all the evidence in the case, the verdict must be for the defendants.

Answer: We decline to so instruct you ; we negative that.[13]

Gentlemen, we submit this important case to you and hope you will give it the consideration which it merits. We have already instructed you, if you find this was the property of Joel C. Lance, then your verdict should be for the defendants. Was Joel C. Lance interested in the property? If you are satisfied that it is the property of Anna Lance under all the evidence in the case, that during the time he held the deed for it, he held it simply as a trustee for her, that it was her money that was invested in the property during all that time, then, the defendants here not having bought any interest of Anna Lance, your verdict would necessarily be in her favor.

The verdict of the jury was in favor of the plaintiff for the land in dispute. A rule for a new trial having been discharged, judgment was entered on the verdict; whereupon the defendants took this appeal, assigning for error, inter alia:

13. The refusal of defendants' point.[13]

*Mr. F. W. Bechtel* and *Mr. John G. Johnson* (with them *Mr. James B. Reilly*), for the appellants:

1. The purchaser at the sheriff's sale had no notice of the alleged equitable title of Mrs. Lance. The deeds to and from Klingerman contained no reference to it, and therefore Mary Gorman had no constructive notice thereof. The notice read at the sale did not mention it, and Mary Gorman, therefore, had no actual notice. On the face of the deed to Mrs. Lance, it was merely the acquisition of the title of J. C. Lance, after the lien of the Swayze judgments had attached to it.

2. The notice at the sale contained nothing new as to her title, was in accordance with the deed and was clearly referable to it. It had no tendency to lead to the inquiry whether she had a title prior to the deed. Mrs. Gorman was therefore a purchaser without notice of the equitable title set up at the trial, and the plaintiff was not entitled to recover: McCandless v. Blakely, 12 W. N. 510; Dickinson v. Beyer, 87 Pa. 274; Woods v. Farmere, 7 W. 384; Leach v. Ansbacher, 55 Pa. 89; Fillman v. Divers, 31 Pa. 429; Scott v. Gallagher, 14 S. & R. 333.

*Mr. James Ryon* and *Mr. John W. Ryon*, for the appellee:

1. Whatever facts put a party upon inquiry, amount in law to notice, provided inquiry becomes a duty, as in the case of purchasers and creditors, and it would lead to knowledge of the requisite facts by the exercise of ordinary diligence and understanding: Jaques v. Weeks, 7 W. 261; Maul v. Rider, 59 Pa. 167. The notice, given at the sheriff's sale, that J. C. Lance had no title, and that the sale would not vest title in the purchaser, was sufficient to warn Mrs. Gorman, and require her to make inquiry of Mrs. Lance as to the grounds upon which she claimed the title.

2. Moreover, at the time of the sale, the property was occupied by tenants of Mrs. Lance. Their possession was notice of their landlord's title: Hottenstein v. Lerch, 104 Pa. 454. The defendants claim under a sheriff's sale upon judgments against J. C. Lance. A judgment creditor is not entitled to the protection of a purchaser against the equitable owner: Cover v. Black, 1 Pa. 493; Rodgers v. Gibson, 4 Y. 111; Ludwig v. Highley, 5 Pa. 132; Reed's App., 13 Pa. 476; Morris v. Ziegler, 71 Pa. 450.

OPINION, MR. JUSTICE STERRETT:

This action of ejectment was brought by plaintiff and her husband, since deceased, to recover possession of the lot in controversy, in her own right. Both parties claimed under Jacob Newkirk, who by deed dated October 23, 1872, duly recorded, conveyed the lot to plaintiff's husband, Joel C. Lance, for the consideration of $7,000. In 1874, Lance and wife by deed acknowledged and recorded in August of that year, "for

and in consideration of $100 and divers other good and sufficient considerations them thereto specially moving," conveyed the same to David H. Klingerman, who, with his wife, thereupon, for the same consideration, by deed acknowledged and recorded on the same day, conveyed the same property to Anna Lance, the plaintiff. Her contention was that the consideration paid to Newkirk was money of her separate estate; that her husband was merely trustee for her of the legal title, and that the conveyance to Klingerman and by him to her was solely for the purpose of uniting in her the legal with the equitable title. In support of that position, evidence was introduced to show that in 1864, and subsequently, money of her separate estate, received from her father, was invested in the Boyer farm, and the deed therefor taken in her name; that about two years thereafter it was sold for $3,600, a portion of which at least was paid to her and afterwards invested in the Robertson and Beddel farm, which in turn was sold and with part of the proceeds the lot in controversy was acquired. The evidence as to these investments, re-investments etc. is quite voluminous; but, without referring thereto in detail, it is sufficient to say that it tended to sustain plaintiff's contention, and having been submitted to the jury under proper instructions, the result was a verdict in her favor. The only inference that can be drawn from the verdict is that the jury found plaintiff's allegations of fact were true, viz., that the money of her separate estate, which had been several times invested and re-invested in real estate, was finally used in acquiring title to the lot in controversy from Jacob Newkirk in October, 1872, and that none of her husband's money or property was employed in making the purchase. Exception was taken to the admission of some of the evidence above referred to, and to instructions of the court in submitting the same to the jury. If it becomes necessary to do so, the specifications of error relating thereto will be considered hereafter.

The contention of the defendant, Mary Gorman, is that in 1876 she became a bona fide purchaser, for value, of the lot in question at sheriff's sale, without notice of any resulting trust in favor of plaintiff. In support of that position, evidence was introduced to prove that the real estate in controversy was levied on and sold on executions based on three judgments

against Joel C. Lance, two of which judgments in favor of C. M. Swayze, Nos. 28 and 29 of March Term 1873, were entered December 4, 1872, nearly two years before the conveyance of Lance and wife to Klingerman, and by him to Mrs. Lance, the plaintiff; that at said sale Mary Gorman purchased the property in controversy for $2,810, and the same was duly conveyed to her by the sheriff. Evidence was also introduced tending to prove that about the time of the conveyance of Lance and wife to Klingerman, and by him to Mrs. Lance, in 1874 and prior thereto, Lance was largely indebted and suits had already been brought against him, etc. When the two Swayze judgments, above referred to, were entered, the title to the real estate in controversy appeared by the record to be in Joel C. Lance, the defendant in said judgments. The other judgment in favor of Schrieber was obtained after the conveyance to Mrs. Lance. It follows from what has been said, as to the actual state of the record, etc., that if defendant's purchase at sheriff's sale in 1876 was without notice, actual or constructive, of Mrs. Lance's equitable title, resulting from the use of her money in effecting the purchase from Newkirk, the defendant acquired a good title. The question of notice thus becomes a controlling factor in this case, and the burden of proving it devolved on the plaintiff. In other words, it was incumbent on her to establish two propositions: first, that she had an equitable estate in the property, resulting from the use of her own money in purchasing the same from Newkirk, anterior to the entry of either of the Swayze judgments on which it was afterwards sold as the property of her husband; second, that the purchaser at sheriff's sale had notice of that equitable title or resulting trust when she bought the property: Fillman v. Divers, 31 Pa. 429. As already stated, the verdict in plaintiff's favor necessarily implies an affirmative finding of the first proposition; and, assuming, for argument sake, that there was no error leading to that result, was there any evidence to warrant the jury in also finding the second proposition affirmatively? If there was not, the plaintiff failed to make out such a case as entitled her to a verdict, and defendant's eighth point for charge, viz., that "under all the evidence in the case, the verdict must be for the defendants," should have been affirmed.

It is contended that the possession of the premises in dispute

Opinion of the Court.

by plaintiff's tenants, at the time of the sheriff's sale, was constructive notice to the defendant of the terms of their tenure, and also of the title of their lessor; that the defendant, in obedience to the maxim, caveat emptor, is presumed to have inquired and informed herself in regard to the condition of the title she was about to purchase. Conceding that inquiry thus became a duty, what would have been disclosed by a reasonable performance of that duty? Defendant would have learned that the parties in possession were plaintiff's lessees, and that plaintiff claimed to own the property. An examination of the records would have disclosed the further fact, that the evidence and only record evidence of her title was the deed of Klingerman and wife recorded August 31, 1874, more than a year and a half after the Swayze judgments, on which the property was about being sold, were entered, and further, that for nearly two years prior to the date of that conveyance the recorded title was in the name of plaintiff's husband, Joel C. Lance. Neither the deed of Klingerman and wife, nor anything in the regular path of inquiry, would have disclosed a trust in plaintiff's favor, resulting from her having furnished out of her own separate estate the consideration of the conveyance to her husband by Jacob Newkirk in 1872. On the contrary, all the inquiry that defendant was reasonably required to make would have resulted in showing that plaintiff's title had its inception in the contemporaneous conveyances of herself and husband to Klingerman, and by the latter to her.

The principles of law applicable to constructive notice, duty of inquiry, etc., are clearly stated in several of our cases, among which are Plumer v. Robertson, 6 S. & R. 179, 185; Woods v. Farmere, 7 W. 382, 386; Dickinson v. Beyer, 87 Pa. 274, 281; Fillman v. Divers, supra. In the former, it is said: " Where a man is in possession, without making his title known, a prudent person would not purchase without making inquiry into that title; but, where he who is in possession, has placed upon record a title consistent with that possession, it may well be taken for granted that he holds under the recorded title; especially in this commonwealth, where every deed, or writing, affecting the title of lands, may be, and ought to be recorded." In Woods v. Farmere, supra, it is said that a purchaser of land is not affected with constructive notice of anything which does

not lie within the course of his title, or is not connected with it; that possession is notice of the possessor's title, but the registry by him of a particular title would restrict the generality of notice from possession. "The tenant's possession is notice of title in every form; the registry of a particular title is notice of that alone, and would be useless for any purpose but to restrict the generality of the notice from possession. It is therefore an indication that the occupant has narrowed his general to specific notice; and, were he not bound by it, he might with impunity do an act to mislead one who is presumed to have used every means of information accessible to him so far as the security of his title is concerned, but no further. . . . . Though a judgment creditor be not a purchaser within the recording acts, a purchaser under his judgment has all the qualities of one, by relation, from the date of the lien; and his title, being thus of record and contemporaneous with the judgment, is paramount to all conveyances or encumbrances subsequently attempted:" Woods v. Farmere, supra.

The notice, "To Purchasers and Bidders," read at the sheriff's sale, that the property therein described "is not the property of Joel C. Lance, as whose property it is advertised to be sold, but is the sole and separate property of Anna Lance, and any person buying the same at this sale will acquire no title," is silent as to the fact, now relied on by the plaintiff, that her equitable title antedated the Swayze judgments on which the property was sold. That fact is not even suggested in the written notice, and, in the absence of anything tending to convey such information, the assertion in the notice that the property offered for sale "is the sole and separate property of Anna Lance," is referable alone to the deed of David H. Klingerman and wife to her, executed after the Swayze judgments were entered against her husband. As notice of the anterior resulting trust and equitable title in Mrs. Lance, the paper read at the sheriff's sale was no more effective than the constructive notice arising from the possession of her tenants at the time of the sheriff's sale. They were both sufficient to put purchasers on inquiry; but, in either case, that inquiry would not necessarily lead to anything more than a knowledge of the Klingerman deed which she had put upon record as the origin of her title.

Syllabus.

There appears to be nothing in the evidence to warrant the jury in finding that Mrs. Gorman purchased with either actual or constructive notice of a resulting trust in favor of Mrs. Lance, or that the latter had any interest whatever in the property in controversy, prior to the conveyance of Klingerman and wife in 1874. We are therefore of opinion that defendants' eighth point for charge should have been affirmed, and the jury thereby instructed "that under all the evidence in the case the verdict must be for the defendants."

This view of the case renders a consideration of other questions, presented by the specifications of error, unnecessary.

Judgment reversed.