# Dickinson *versus* Beyer, Adm'r, &c.

1. Land was charged with dower upon which arrears were due at the time of a sheriff's sale upon a judgment immediately subsequent to the charge. *Held*, that the arrears due at the sale were discharged thereby. Schall's Appeal, 4 Wright 170; Helfrich *v.* Weaver, 11 P. F. Smith 385, and Wertz's Appeal, 15 Id. 306, distinguished.

2. A tract held by an equitable title, was divided by partition in the Orphans' Court and charged with the widow's interest. The allottees subsequently acquired and shared the legal title by conveyances, in which there was no allusion to the equitable title or the partition or the charge in favor of the widow. *Held*, that these conveyances, although recorded, were not notice to a bona fide purchaser at sheriff's sale of a portion of the tract, and that no recovery could be had from such purchaser of the arrears due the widow.

June 5th and 6th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY. JJ.

[Dickinson v. Beyer.]

Error to the Court of Common Pleas of *Clearfield county:* Of May Term 1877, No. 92.

This was an action of assumpsit brought by John Beyer, administrator of Christina Beyer, against Abraham Beyer as defendant, and William R. Dickinson, terre-tenant, to recover arrears of statutory dower charged originally upon land of Abraham Beyer, afterwards conveyed to William R. Dickinson.   The *narr.* contained one special count setting out briefly the original charge and the chain of title to Dickinson, and counting upon an implied assumpsit by him to pay the annual interest, &c.   Plea: Non-assumpsit, with leave, &c.

The facts were as follows : David Beyer, husband of Christina, was at the time of his death the owner of the equitable title to a tract of land, the legal title to which was in Hardman Phillips. In 1846, after the death of David, his real estate was divided by partition in the Orphans' Court and the two purparts awarded to his two sons, Abraham and Henry, the portion allotted to the former being charged with the annual payment of $34.12 to Christina, David's widow.   A balance of purchase-money was due to Phillips, and this sum was paid by Abraham, as administrator of his father, and credit for the payment taken in his administration account, settlement therefor being privately made with the heirs. · Thereupon Phillips and wife, in February 1850, conveyed to Abraham and Henry the legal title to the real estate of which partition had been decreed by the court, without in any way referring to David Beyer or to the proceedings, and in May 1851, Abraham and Henry executed between themselves, upon the back of the deed made by Phillips, a deed of partition of the same real estate, conveying to each in severalty the same land which he had been awarded by the court, but making no reference to the proceedings or to the equitable title of David Beyer.   These instruments were duly recorded in ·May 1851.   In January 1857, judgments were obtained against Abraham by Samuel Smith, under which the purpart of Abraham was sold, in January 1861, to William A. Wallace, attorney for·Mr. Smith.   Mr. Wallace subsequently, in 1863, sold to A. S. Dickinson, although the deed was not delivered until October 1st 1869, and the latter conveyed in the year last named to his brother, William R., the defendant named as terre-tenant.

The annual interest due the widow was paid until 1851 or 1852 by Abraham, after which nothing was paid, and the widow dying in 1866, this suit was brought by her administrator to recover the arrears.   The defendant, Dickinson's 1st, 2d, 4th, 5th and 6th points, with the answers of the court thereto, were as follows :

1. There can be no recovery by plaintiff for anything accruing previous to the sheriff's sale to W. A. Wallace, in January 1861.

Ans.  "For present purposes we answer this point in the nega-

[Dickinson *v.* Beyer.]

tive, but will reserve the question involved in it for further consideration ; and if we hereafter come to the conclusion that the sheriff's sale in January 1861 discharged the instalment then due Christina Beyer, we can enter a judgment for the proper amount, as there is no dispute as to the amount which would be due subsequent to the sheriff's sale."

2. The fact appearing that either W. A. Wallace or A. S. Dickinson was a bona fide purchaser without notice, with deed and chain of title from the legal owner duly recorded, this would give to him and those under him title against the claim of plaintiff, and prevent a recovery by plaintiff in this case.

Ans. " We answer this point in the negative. There is no particle of evidence that either Mr. Wallace or those claiming under him at the time of their respective purchases had ever seen or heard of the deed from Hardman Phillips and wife to Abraham and Henry Beyer ; and, even if they had known of that deed, it could not have had the effect of giving them the land free from a charge upon the title remaining of record."

4. There can be no recovery against Abraham Beyer in this case.

Ans. " The plaintiff does not seek to recover a personal judgment in this case against Abraham Beyer, but simply a judgment *de terris ;* that is, a judgment to bind the land upon which this dower was specifically charged. The naming Abraham Beyer as defendant was proper, as he might have evidence of payments to his mother which the other defendant knew nothing of, and his being joined as defendant can work injury to no one."

5. There can be no recovery by plaintiff against W. R. Dickinson under the declaration, pleadings and evidence in this case.

Ans. " We answer this point in the negative ; if it is meant that there can be no recovery that will bind the land now owned by him. There can be no recovery against him personally."

6. Under the declaration, pleadings and evidence, the plaintiff cannot recover, and the verdict must be in favor of defendants.

Ans. " We negative this point."

The court (Orvis, A. L. J.,) instructed the jury to find how many annual payments were in arrear, and the jury having found a sum due since 1852, the court afterwards entered judgment on the verdict for the full amount claimed, discussing the question reserved in the answer to the first point in an elaborate opinion, and holding that the arrears of interest due at the time of the sheriff's sale were not discharged by that proceeding.

The defendant, Dickinson, took this writ, assigning for error the answers to the points and the entry of judgment on the reserved point.

*McEnally & McCurdy,* for plaintiff in error.—1. A sheriff's

[Dickinson v. Beyer.]

sale made on a judgment subsequent to the charge of statutory dower, *there being no intervening mortgage or fixed lien*, discharges the annual interest due at the time of the sale : Reed *v.* Reed, 1 W. & S. 239; Mohler's Appeal, 5 Barr 420; Shertzer's Executors *v.* Herr, 7 Harris 37; Zeigler's Appeal, 11 Casey 173.

2. Mr. Wallace and the plaintiff in error were holders of a·perfect title on record, with no notice, actual or constructive, in the line of their title of any claim of David Beyer, or his widow, and there can be no recovery therefor against the plaintiff in error : Bracken *v.* Miller, 4 W. & S. 102; Filby *v.* Miller, 1 Casey 264; Woods *v.* Farmere, 7 Watts 382; Stewart *v.* Freeman, 10 Harris 120. Abraham's possession being consistent with his title on record was not notice of any different title : Plumer *v.* Robertson, 6 S. & R. 184; McCulloch *v.* Cowher, 5 W. & S. 429.

3. The evidence did not support the declaration.

*David L. Krebs*, for defendant in error.—1. The widow's interest is an estate in the land, not a lien : Schall's Appeal, 4 Wright 170; and is not divested by a sheriff's sale : Gourley *v.* Kinley, 16 P. F. Smith 270. The interest, being an incident of the principal, remains charged also, therefore, and this principle is decided in Schall's Appeal, *supra*; Helfrich *v.* Weaver, 11 P. F. Smith 385; and Wertz's Appeal, 15 Id. 306.

2. The recording acts were intended for the protection of purchasers against conveyances from the same vendor. The sheriff's sale only passed the interest Abraham really had : Friedly *v.* Scheetz, 9 S. & R. 162; Bashore *v.* Whisler, 3 Watts 490; Stewart *v.* Freeman, 10 Harris 123.

Mr. Justice WOODWARD delivered the opinion of the court, October, 1878.

In the proceedings for the partition of the real estate of David Beyer, deceased, the purpart allotted to Abraham Beyer was made subject to the payment of the annual sum of $34.12 to the widow of the decedent during her life. On the 14th of January 1861, this purpart was sold by virtue of executions issued in two judgments, obtained against Abraham Beyer by Samuel Smith, amounting to $2000. In September 1869, the title of the purchaser at the sheriff's sale became vested in William R. Dickinson, one of the defendants below, and the plaintiff in error. After the death of the widow, her administrator brought this suit to recover the arrears of·the annual payments which had been secured to her in the partition. The question, which was mainly discussed on the trial of the cause and in the opinion on the point reserved by the court below, was whether the plaintiff could recover unpaid instalments from the time when Abraham Beyer ceased to pay them, or

[Dickinson *v.* Beyer.]

only from the date of the sheriff's sale. The jury ascertained that payments were in arrear from the year 1852, and rendered a verdict for the sum accrued during the whole period, for which the court afterwards entered judgment.

There was no special contest as to the nature of the widow's right. It was admitted that since the decision in Schall's Appeal, 4 Wright 170, statutory dower is an interest in land, and not a lien upon it liable to be divested by a sale under a junior encumbrance. But the ground was taken on the part of the defence that payments which were due at the date of the sheriff's sale were discharged by it, and should have been demanded out of the proceeds. Through- out the clear and carefully prepared opinion of the judge who tried the cause, Schall's Appeal, *supra*, Helfrich *v.* Weaver, 11 P. F. Smith 385, and Wertz's Appeal, 15 Id. 306, were treated, in connection with Devine's Appeal, 6 Casey 348, and The Miner's Bank *v.* Heilner, 11 Wright 452, as having established the binding and unbending rule that payments accrued and in arrear out of an estate or interest in land, or on account of a charge upon it, can only be divested when the estate, interest or charge is itself divested. The labor bestowed upon the cause by the court below makes it necessary to inquire, at some tedious length, whether the authorities relied on were designed to have a scope so comprehensive as that attributed to them. All of them, except Schall's Appeal, involved a discussion of the effect of the Act of the 6th of April 1830, in protecting the liens of mortgages from extinguishment by judicial sales under later liens. In The Miners' Bank *v.* Heilner, a mortgage on a leasehold property had been executed in pursuance of the provisions of the Act of the 27th of April 1855, and the property had been sold under a testatum fi. fa. from another county. It was ruled that such a mortgage stood on precisely the same footing as the mortgage of a freehold; that rent reserved in a coal lease was analogous to a ground-rent, against the existence of which the lien of a mortgage was expressly preserved by the Act of 1830; and that rent due on such a lease was not under that act a prior lien, which would have the effect to discharge a mortgage of the leasehold by a sheriff's sale of the term on an execution against the lessee. Devine's Appeal decided that on a sheriff's sale subject to a mortgage and also to a prior ground-rent, the purchaser takes subject to the arrears of ground-rent due at the time of the sale. The real point that was settled in Schall's Appeal was, that where the conditions defining the liens to which a sale was subject were in writing and were expressed in the sheriff's deed, the court would not relieve the purchaser from any part of his bid, but would enforce the contract of sale. In Helfrich *v.* Weaver, a rule was laid down which has become axiomatic, that liens, the existence of which prior to a mortgage will cause it to be divested by a sheriff's sale, must be such as are themselves divested

[Dickinson v. Beyer.]

and thrown upon the fund. The facts of that case were, that one Martin had died intestate seised of real estate, which was sold to Kuntz, subject to the dower of Martin's widow; the land being devised by Kuntz to his wife for life or during widowhood, a portion was sold to Helfrich by order of the Orphans' Court in proceedings under the Act of the 18th of April 1853, the purchase-money remaining charged upon the premises during the life or widowhood of the widow of Kuntz, the interest to be paid to her annually; and upon these facts it was held that the lien of a mortgage afterwards executed by Helfrich was not discharged by a subsequent judgment against him. Wertz's Appeal, the latest of the authorities on which this judgment was rested, decided that where the owner of land charged with a widow's thirds mortgaged it, and afterwards a judgment was recovered against him, under which the land was sold, there being then arrears of interest due the widow, the purchaser took subject to the arrears of interest as well as to the mortgage.

It is manifest that the point in each of these cases was ruled in contemplation of the fact that a mortgage intervened between the estate, or charge out of which the arrears were payable and the judgment under which the sheriff's sale was made. It was no part of the intention of the judges who decided them, to overturn other established principles or overrule other recognised precedents. While it is clear that a widow's thirds are such an estate in land as to be free from hazard of divestiture by a sale under a junior encumbrance, it is believed to be equally clear that instalments payable out of that estate, in arrear and capable of ascertainment, are chargeable, when no mortgage intervenes, on the fund the sale produces. Reed v. Reed, 1 W. & S. 235, involved the right to unpaid instalments of an annuity given to a widow by her husband's will. "It was long ago decided," Judge SERGEANT said, in Bantleon v. Smith, 2 Binn. 146, "that arrears of ground-rent due at the time of a sheriff's sale are payable out of the moneys raised by the sale. There is no distinction between a legacy charged on the land and other liens. The only reason why the future arrears of an annuity payable out of the land to the widow have been excepted, is on account of the impossibility of computing their amount. Therefore, as to them, the purchaser has been held to take the land chargeable with the future payments. But this does not apply to arrears due and payable. They are a fixed and certain debt, capable of exact computation, and therefore entitled to be discharged." In Mohler's Appeal, 5 Barr 418, a testator had charged land devised to his son with the yearly interest on 500l., payable to his widow during life. The widow brought two suits for arrears. The first was undertermined when the land was sold. In the second she recovered a judgment for arrears amounting to $360, which she assigned to Martin Frey. The land was sold under the judgment, the net proceeds for distribution being $149.07. It was held that

the assignee in the second suit was not entitled to the whole fund, but was merely entitled to come in *pari passu* with the widow, to whom the arrearages of interest included in the first suit as well as the arrearages due at the time of the sheriff's sale, were payable.   Shertzer's Executors *v.* Herr, 7 Harris 34, was decided upon facts partly ascertained in Kline *v.* Bowman, reported in the same book at p. 24.   Land had been sold under proceedings in partition by an order of the Orphans' Court, and been purchased for certain minor heirs, and conveyed to another heir, the deed declaring that the sum of $2713.19 remained charged on the land during the life of the widow of the intestate.   The property was sold at sheriff's sale on judgments not connected with the partition.   In the opinion delivered in Shertzer's Executors *v.* Herr, Judge LEWIS said : "The sheriff's vendee takes the land charged with the encumbrance which was payable at the death of the widow of John Bowman, deceased. It follows that no part of the money in court can be appropriated to the payment of any part of that lien, except the annual interest which was in arrear at the time of the sale by the sheriff." In reversing the decree in Zeigler's Appeal, 11 Casey 173, $127.68, "arrears of dower annuity," were directed to be paid to Hannah Garber, to whom the annual interest on $1815 had been secured in the partition of her husband's estate.   There the sheriff's sale which produced the fund, was made on the mortgage which was the lien next succeeding the charge in favor of the widow.   In Lauman's Appeal, 8 Barr 473, a widow entitled to interest during life, on unpaid purchase-money for land sold under an Orphans' Court, was allowed in the distribution of the proceeds of a sheriff's sale the arrearages due when the sale was made.   The very point of the present inquiry would appear to have been decided in Shertzer's Ex'rs *v.* Herr, in Zeigler's Appeal, and in Lauman's Appeal.

Apart from direct authority, the rule and practice have been repeatedly assumed to be established in other cases.   Thus in Mather *v.* McMichael, 1 Harris 301, it was said by Judge BELL, "Bantleon *v.* Smith, 2 Binn. 146, reiterated by Pancoast's Appeal, 8 W. & S. 381; Dougherty's Estate, 9 Id. 189, and Ter Hoven *v.* Kerns, 2 Barr 96, settle the doctrine that the arrears of ground-rent, being a lien on the land charged, are to be paid out of its proceeds when sold by judicial process.   In this respect this species of lien seems to stand on the same footing with other pecuniary encumbrances due at the time of sale and capable of ascertainment.   Of these it most nearly resembles the arrears of an annuity payable to the widow of a testator out of lands devised by him, or the charge imposed by our intestate laws in lieu of dower.   In these instances, by the policy of our law, the sale divests the encumbrance of the sums due, and, as a necessary consequence, the owner is turned on the proceeds in exoneration of the land.   And even in Wertz's Appeal, the last of the precedents relied on by the court below, the same

principle is shown to have been recognised by the following extract from the opinion of Judge SHARSWOOD: "It has, however, undoubtedly been held that though the charge itself may be a fixed lien, incapable of divestiture because incapable of computation, the rule is different as to any arrears either of rent, annuity or interest which may be due at the time of the sheriff's sale, because such arrears are ascertainable with certainty in amount, and therefore payable out of the fund. After citing the cases, the distinction was stated to consist in the fact that in none of them was there a mortgage immediately following the fixed lien."

On another ground the defendant contended that the plaintiff was not entitled to recover. At the time of the partition of David Beyer's real estate, the legal title was in Hardman Phillips. The purchase-money due was paid by the administrators, and credit taken for it in the administration account. Phillips conveyed the land on the 12th of February 1850, to Abraham Beyer and Henry Beyer, who divided it between themselves in the same shares which had been allotted to them in the partition. In their second point, the counsel for the defendants asked the court to charge that "the fact appearing that either W. A. Wallace or A. S. Dickinson was a bona fide purchaser without notice; with deed and chain of title duly recorded, this would give to him and those under him title against the claim of the plaintiff, and prevent a recovery by the plaintiff in this case." The court said, "We answer this point in the negative. There is no particle of evidence that either Mr. Wallace, or those claiming under him, at the time of their respective purchases, had ever seen or heard of the deed from Hardman Phillips and wife to Abraham and Henry Beyer; and even if they had known of that deed, it could not have had the effect of giving them the land free from a charge upon the title remaining of record." The partition of David Beyer's real estate was made in the year 1846. Phillips conveyed to Abraham and Henry Beyer in 1850. The judgments under which the property was sold, were obtained at January term, 1857, and the sale was made in January 1861. The deed from Phillips was in the ordinary form, and contained no reference to the contract with David Beyer, and that contract was never recorded. When, therefore, Abraham Beyer's property was sold, there was nothing to charge the purchaser, under the recording acts, with notice of David Beyer's equitable title, or of the interest of the widow which had sprung from it. The deed from Phillips and that by which his grantees divided the land between themselves, made up the apparent title under which those grantees claimed. These deeds did not indicate to the purchaser the duty of examining the records of the Orphans' Court. "The tenant's possession is notice of title in every form; the registry of a particular title is notice of that alone, and would be useless for any purpose but to restrict the generality of notice from possession:"

[Dickinson *v.* Beyer.]

Woods *v.* Farmere, 7 Watts 384. In that case it was held that a purchaser of land is not affected with constructive notice of anything which does not lie within the course of his title, or is not connected with it; and that he is not, therefore, presumed to know of the registry of a will containing a devise of the land which he claims by title paramount. "Where he who is in possession has placed upon record a title consistent with that possession, it may well be taken for granted that he holds under the recorded title, especially in this Commonwealth, where every deed or writing affecting the title of lands may be and ought to be recorded:" Tilghman, C. J., in Plumer *v.* Robertson, 6 S. & R. 179. It was ruled in Banks *v.* Ammon, 3 Casey 172, that a purchaser at a judicial sale is protected from defects in a title apparently good, and that the record of a deed which contains neither the locality nor definite marks of identification of the land, is not notice to such a purchaser, nor will it put him on inquiry. The burden of proof of actual notice to Mr. Wallace and the defendant of David Beyer's equitable title, and of Abraham Beyer's claim under the partition in the Orphans' Court was upon the plaintiff. As the facts appeared at the trial, the second point of the defendants should have been affirmed.

There is nothing in the objections to the pleadings specified in the fifth and sixth assignments of error which could not have been met by an amendment.

Judgment reversed, and *venire de novo* awarded.