# Levengood's Estate.

*Executions—Judicial sale—Liens—Decedents' estates—Sheriff's sale—Widow's election—Devise at valuation.*

1. The policy that judicial sales shall pass land clear of all liens, other than those expressly saved by statute, is of general application, and the exceptions to it may be reduced to three classes: (1) Where liens are created by last wills and testaments as permanent provisions for wives and children; (2) where from the nature of the incumbrance it will not readily admit of valuation; and (3) where it is plain from the agreement of the parties that the incumbrance was intended to run with the land.

2. When lands are devised, or the lands of an intestate are taken under proceedings in partition subject to a charge the interest of the amount to be paid to the widow during her lifetime, or widowhood, and the principal to be paid to the heirs or legatees upon the happening of the contingency which determines the widow's interest, a sheriff's sale of the land upon a lien attaching after the heir or devisee has acquired title and before the happening of the contingency which determines the estate of the widow, will not discharge the lien of the principal secured to the heirs or legatees, nor will it discharge the installments of interest subsequently becoming payable to the widow, although the accrued and annual payments to the widow are payable out of the proceeds of the sheriff's sale and thereby discharged.

3. When land is by deed, will or proceedings in partition, made subject to a charge the interest upon which is to be paid to the widow annually during her life and at her death the principal to be paid to the heirs or legatees of the decedent, the death of the widow renders the amount of the charge or lien and the interest thereon immediately ascertainable; it is then due and there is no reason for its remaining longer an incumbrance when the contingency upon which the principal of the charge was to become due and payable has occurred, and a sheriff's sale of the land discharges the entire lien. When the amount of a charge or lien has become certain; when the event upon which it was to be paid has occurred; when it is due, it is discharged by a sheriff's sale.

4. A widow who elects against her husband's will takes nothing under the will, and the devises and bequests to her are a trust in her for the benefit of the disappointed devisees and legatees to the amount of their interest therein. The part of the estate thus sequestrated to compensate disappointed legatees, consists of the rejected devises and bequests to the widow. Testator cannot be held to have died intestate as to the one-third of his real estate to the use of which during her life, the widow was entitled.

5. The only remedy for a devisee who is disappointed by the election

of a widow not to· take under the will is through an appeal to the equity powers of the court, to procure a marshaling of the assets, and the court may, upon considering all the provisions of will and the entire assets of the estate, enter a decree which will protect and preserve the interests of all the legatees and devisees, and fix the conditions under which charges imposed by the will upon land devised shall be secured and paid. When this is not done the devisees must pay the charges to which the devises are by will made subject, and the settlement of each devisee with the widow is a matter entirely outside the will. At law the devisee cannot accept the land and then refuse to pay the charge in the manner by the will required.

6. Where a testator devises his land to his brother at a valuation, charges an amount specified on the land for his wife during her life or widowhood, and gives the remainder of his estate to his daughter, and the brother elects to take the land, but the widow elects to take against the will, thereafter marries and subsequently dies, and the brother pays to the widow during her lifetime a fixed sum per year without any decree of court, or record of the agreement, a sheriff's sale of the property after the remarriage of the widow will divest the daughter of her right to any interest in the land after the death of her mother.

Argued Nov. 10, 1908. Appeal, No. 26, Oct. T., 1908, by Frank L. Mauger, from decree of O. C. Berks Co., Oct. T., 1907, No. 37, enforcing a charge on land in estate of Philip Levengood, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Petition to charge a certain fund on land and decree its payment thereout. Before BLAND, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree in favor of the petition.

. *Isaac Hiester*, for appellant.—Assuming that the entire valuation money was a charge it was divested by the sheriff's sale and the amount remaining unpaid was payable out of the proceeds of the sheriff's sale: Barnet v. Washebaugh, 16 S. & R. 410; Hellman v. Hellman, 4 Rawle, 440; Loomis's App., 22 Pa. 312; Hanna's App., 31 Pa. 53; Woods v. White, 97 Pa. 222; Pryer v. Mark, 129 Pa. 529; Darling v. Edson, 4 Pa. Superior Ct. 498; Gilbert's App., 85 Pa. 347; Lancaster County

Nat. Bank's App., 127 Pa. 214; Coover's App., 74 Pa. 143; Ferguson's Est., 138 Pa. 208; Vance's Est., 141 Pa. 201; Woodburn's Est., 151 Pa. 586.

The election of the widow to take against the will and her agreement with the devisee to accept from him during her life the interest on one-third of the valuation money in lieu of dower did not under the law entitle him to retain in his hands the principal of that one-third until her death as a fixed lien not subject to discharge by a sheriff's sale: Sandoe's App., 65 Pa. 314; Young's App., 108 Pa. 17; Batione's Est., 136 Pa. 307; Evans's Est., 150 Pa. 212; Armstrong v. Walker, 150 Pa. 585; Collins's Est., 10 Pa. Dist. Rep. 249; Devecmon v. Kuykendall, 89 Md. 25 (42 Atl. Repr. 963).

There is no evidence that Anna Maranda, the legatee, agreed that $1,038.30 of the valuation money should remain a charge during the life of the widow or that the purchaser at sheriff's sale had notice of any such agreement if there was one: Hiester v. Green, 48 Pa. 96; Heist v. Baker, 49 Pa. 9; Strauss's Appeal, 49 Pa. 353; Trinity Church v. Watson, 50 Pa. 518; Rudy's Appeal, 94 Pa. 338; Cella's Estate, 17 Pa. Superior Ct. 428.

The appellee was negligent in not keeping her claim alive and demanding payment from the proceeds of the sheriff's sale: Maple v. Kussart, 53 Pa. 348; Garrard v. Haddan, 67 Pa. 82; Jeffers v. Gill, 91 Pa. 290; Dowd v. Crow, 205 Pa. 214.

*C. H. Ruhl*, with him *John W. Bickel*, for appellee.—By her election, the intestate laws superseded the will as to her and excluded the power of conversion under the will so far as it affected her estate. The devisee could take the real estate, but he took it subject to the widow's statutory dower: Hoover v. Landis, 76 Pa. 354; Murray's Estate, 28 Pa. Superior Ct. 474.

When a testator by his will directs the sale of his real estate, and a widow elects to take her rights under the intestate law, as to her there is no will and no conversion: Cunningham's Estate, 137 Pa. 621.

The widow's estate under the intestate act of April 8, 1833, sec. 1, is "one-third part of the real estate for the term of her

life," and the form in which the law assigns it, leaves its character unchanged: Schall's App., 40 Pa. 170; Gourley v. Kinley, 66 Pa. 270; Miller v. Leidig, 3 W. & S. 456; Diefenderfer v. Eshleman, 113 Pa. 305; Bachman v. Chrisman, 23 Pa. 162; Hart's Estate, 7 W. N. C. 162; Medlar v. Aulenbach, 2 P. & W. 355; Hise v. Geiger, 7 W. & S. 273; Fisher v. Kean, 1 Watts, 259; Watterson's App., 95 Pa. 312; McGowan v. Bailey, 179 Pa. 470; Schall's App., 40 Pa. 170; Kline v. Bowman, 19 Pa. 24; Woods's App., 20 W. N. C. 250.

Unpaid consideration money is a lien upon land and is to be paid in preference to a mortgage created by the grantee: Neas's Appeal, 31 Pa. 293; Hartzell's Appeal, 178 Pa. 284; Ruoff's Appeal, 188 Pa. 384; Walters's Estate, 197 Pa. 555.

But after the widow's death her interest is a mere lien which a subsequent judicial sale will discharge: Riddle's Appeal, 37 Pa. 177; Grove's Appeal, 103 Pa. 562.

When land is adjudged at the valuation her share is a statutory lien which exists in favor also of those entitled to the principal after her death: Medlar v. Aulenbach, 2 P. & W. 355.

It need not be secured by recognizance: Good v. Good, 7 Watts, 195; Hart v. Homiller, 23 Pa. 39; Ruoff's Appeal, 188 Pa. 384; Fishburn's Appeal, 10 W. N. C. 489.

OPINION BY PORTER, J., February 26, 1909:

The court below entered a decree that the land of the appellant "is subject to a charge or lien amounting to $723.17, its proportionate part of the principal of the dower of Rachel Geyer (late Levengood), deceased;" and that said amount, with interest from April 8, 1907, the date of the death of said Rachel Geyer, be paid by said Frank L. Mauger to Anna Maranda Knapp, a daughter of Philip Levengood, deceased, and that upon failure to so pay the payment should be enforced by a writ of levari facias against the land of the appellant. The respondent appeals.

Philip Levengood died on November 4, 1859, and by his last will devised to his brother, Augustus W. Levengood, his farm, "Containing seventy-four acres, being the same more or less, for which he is to pay four thousand dollars." The will then be-

queathed certain personal property to his wife Rachel and provided that "one thousand dollars shall remain in my real estate, the interest thereof must be paid to my wife Rachel annually as long as she stay my widow." The will then bequeathed "all what is left after my just debts are paid" to his daughter Anna Maranda, the appellee, with this special provision: "If it should happen that my said wife should marry again then the amount which remains in my real estate, shall fall to my daughter Anna Maranda." The will provided for the contingency of the death of Anna Maranda, the daughter, during her minority by the following clause: "If it should happen that my daughter Anna Maranda should die before she arrives at the age of twenty-one years or without heirs, then it shall fall to my brother and sisters or their heirs share and share alike." The will further directed that in case Augustus W. Levengood, the brother of testator, should refuse to take the real estate at the valuation fixed by the will, then the farm should be sold by the executors, and empowered said executors to make a deed or deeds conveying the same by title in fee simple. Rachel Levengood, testator's widow, on November 23, 1859, filed her election in writing not to take under the will of Philip Levengood, but to claim her "right of dower in his real estate," and the "interest in his personal property as given to me under the laws of this Commonwealth." Augustus W. Levengood, on February 8, 1860, filed his written acceptance of the devise of the farm in the following form: "I do hereby give notice that I will accept the real estate of said Philip Levengood, deceased, at the sum of four thousand dollars according to the provisions of the will of said deceased, and that I offer to pay to Rachel Levengood, the widow of said deceased, the sum of sixty-two dollars and thirty cents per annum during her natural life, which annual sum, shall be a lien on said real estate during her lifetime." Augustus W. Levengood, the devisee, and Rachel Levengood, the widow, entered into a written agreement, on March 5, 1860, which was duly recorded, setting forth the devise of the farm to the former and the refusal of the latter to take under the will and her election to claim her dower in the land and her share of the personal property under the intestate laws; that "for the purpose of

settling the amount of dower or yearly payment which said Rachel Levengood shall receive, and to avoid the expense and trouble of an action of dower to ascertain said amount," it was agreed that said Rachel Levengood should receive from said Augustus W. Levengood, his heirs and assigns, "the sum of sixty-two dollars and thirty cents yearly and every year, during the term of her natural life, the first payment to be made on the first day of January one thousand eight hundred and sixty-one, and every year thereafter, said sum to remain a lien on the aforesaid real estate, and the said Rachel Levengood shall have a right to resort to all remedies given by law for the collection of said yearly payment to which she would have a right to resort at any common law or under the intestate laws of this Commonwealth. In consideration whereof the said Rachel Levengood does hereby remise, release and quitclaim unto the said Augustus W. Levengood, his heirs and assigns, all her right, title and interest in the real estate aforesaid which she has under and by virtue of the will aforesaid, and it is understood that the yearly payment aforesaid shall be in lieu and stead of her dower at common law or under the intestate laws of Pennsylvania." On June 2, 1861, Rachel Levengood, the widow, married William Geyer. Augustus W. Levengood and those who from him derive title continued to pay to Rachel Geyer (formerly Levengood) the yearly payment of $62.30 until the time of her death, which occurred on April 8, 1907. Augustus W. Levengood, by deed dated November 14, 1868, and duly recorded on the twenty-seventh day of the same month, conveyed to Mahlon Focht eleven acres and fifty-six perches, a part of the tract of seventy-four acres devised to him, as aforesaid; the deed containing the following clause: "and also subject to one other dower of $159.27, the interest thereof to be paid annually to Rachel Levengood, widow of Philip Levengood, deceased, now Rachel Geyer, during her natural life, and after her death the principal sum of $159.27, to be paid by the said Mahlon Focht, his heirs, or assigns, to the legal heirs of Philip Levengood, deceased." The devisee, on April 2, 1887, conveyed another part, being eleven acres and fifty-four perches, of the tract to Wellington L. Mauger, "subject to the payment of $155.66, the interest

whereof to be paid annually to said Rachel Levengood and the principal sum to be paid as provided in the will of Philip Levengood, deceased," but this deed was not recorded and of its contents neither the purchaser at the sheriff's sale, hereinafter referred to, nor those who claim under him had notice. Augustus W. Levengood, the devisee, on April 2, 1895, being still the owner of fifty-two acres of the tract, mortgaged the same to Cornelius F. Roland, for $3,700, without any reservation or mention of any dower or other charges, and this mortgage was the same day duly recorded. This mortgage was duly foreclosed and the fifty-two acres of land were sold thereunder to Horace Roland and a deed therefor given by the sheriff on August 22, 1896. The title thus acquired by Horace Roland in the tract has by sundry mesne conveyances become vested in Frank L. Mauger, this appellant, who acquired title on March 14, 1907. The widow of Philip Levengood having died on April 8, 1907, Anna Maranda Knapp (formerly Levengood), on November 1, 1907, presented her petition to the court below praying that the lands of the appellant be decreed to be charged with the payment of its proportionate part of the principal of the fund upon which the widow, Rachel, had during her lifetime received the interest. The hearing upon this petition developed the facts hereinbefore recited, and the court, being of opinion that those facts constituted the supposed principal of the fund a fixed and continuing lien, which would not be discharged by a sheriff's sale, entered the decree of which the appellant complains.

The question is, was the land of the appellant subject to a lien or charge, in favor of this appellee, which was not divested by the sheriff's sale in 1896, and, if so, how did that charge arise? This inquiry leads us first to consider the will of Philip Levengood. The farm was devised to his brother, the devisee, to pay for the same $4,000, and the money to be paid became a charge upon the land. Had the will contained no further provision, the price which the devisee was to pay would have been a lien which would be discharged by a sheriff's sale, and, so far as the will is concerned, that rule is applicable to all of the purchase money which the devisee was to pay except the $1,000 which

was to remain in the real estate so long as Rachel Levengood, the widow, did not remarry: Lancaster County National Bank's Appeal, 127 Pa. 214; Pryer v. Mark, 129 Pa. 529. The policy that judicial sales shall pass land clear of all liens, other than those expressly saved by statute, is of general application, and the exceptions to it may be reduced to three classes: "1st. Where liens are created by last wills and testaments as permanent provisions for wives and children; 2d. Where from the nature of the incumbrance it will not readily admit of valuation; and 3d. Where it is plain from the agreement of the parties that the incumbrance was intended to run with the land:" Hiester v. Green, 48 Pa. 96; Heist v. Baker, 49 Pa. 9; Rohn v. Odenwelder, 162 Pa. 346. When lands are devised, or the lands of an intestate are taken under proceedings in partition, subject to a charge the interest of the amount to be paid to the widow during her lifetime, or widowhood, and the principal to be paid to the heirs or legatees upon the happening of the contingency which determines the widow's interest, a sheriff's sale of the land upon a lien attaching after the heir or devisee has acquired title and before the happening of the contingency which determines the estate of the widow, will not discharge the lien of the principal secured to the heirs or legatees, nor will it discharge the installments of interest subsequently becoming payable to the widow, although the accrued annual payments to the widow are payable out of the proceeds of the sheriff's sale and thereby discharged: Kline v. Bowman, 19 Pa. 24; Hartzell's Estate, 188 Pa. 384; Walters's Estate, 197 Pa. 555; Schall's Appeal, 40 Pa. 170; Dickinson v. Beyer, 87 Pa. 274. When land is by deed, will or proceedings in partition, made subject to a charge the interest upon which is to be paid to the widow annually during her life and at her death the principal to be paid to the heirs or legatees of the decedent, the death of the widow renders the amount of the charge or lien and the interest thereon immediately ascertainable, it is then due and there is no reason for its remaining longer an incumbrance, when the contingency upon which the principal of the charge was to become due and payable has occurred, a sheriff's sale of the land discharges the entire lien: Riddle & Pennock's Appeal,

37 Pa. 177; Grove's Appeal, 103 Pa. 562.  When the amount of
a charge or lien has become certain; when the event upon which
it was to be paid has occurred; when it is due, it is discharged
by a sheriff's sale: Woods's Appeal, 20 W. N. C. 250.  The $1,000
which was by the testator charged upon his real estate was so
charged for the purpose of making provision for his widow dur-
ing her widowhood.  The widow was to receive the income of
that amount so long as she did not remarry.  The daughter took .
under the will a vested remainder in this fund, subject to be di-
vested by her death prior to her attaining the age of twenty-one
years.  The brother and sisters of the testator took a contingent
remainder in the fund, to take effect in case the daughter died
during her minority: Batione's Estate, 136 Pa. 307.  The widow
having remarried, in 1861, her interest in the fund then ter-
minated, and the amount of the charge became then definitely
ascertainable.  When, in 1877, Anna Maranda, the daughter,
attained the age of twenty-one years her right to receive the
fund became absolute, the right of the brother and sisters of the
testator therein had terminated, the contingency upon which
that right depended not having happened.  There was from
that time no uncertainty as to the amount of the charge nor the
person to whom it was to be paid; it was due, under the pro-
visions of the will.  If, therefore, this lien was not divested by
the sheriff's sale, in 1896, the reason for its continuance must be
found outside the provisions of the will of Philip Levengood.

The learned judge of the court below held that as the widow
had refused to take under the will, electing to take her dower in
the land, and the devisee had entered into an agreement with
her under the provisions of which he was to pay her $62.30 per
year, in lieu of her dower in the land, the land became charged
not only for the yearly payment but for an amount of principal
sufficient at the rate of six per cent interest per annum to pay
that yearly charge, the said principal to be paid to the legatees
under the will upon the death of the widow.  The amount of the
principal was ascertained to be $1,038.30, and the proportion of
said amount chargeable upon the fifty-two acres owned by the
appellant was fixed at the sum named in the decree.  The
learned judge held that, by implication of law, the devisee must

be held to have retained this amount out of the valuation at
which, under the terms of the will, he had taken the farm.  It
may here be observed that in no record in the line of the title
of the appellant, or in any manner connected therewith, is there
any mention of a charge upon the land amounting to $1,038.30;
nor was there any evidence that Cornelius F. Roland, the mort-
gagee of Augustus W. Levengood, or Horace Roland, the pur-
chaser at the sheriff's sale, had either notice or knowledge of any
charge or lien amounting to that sum.  The court below held,
however, that because the devisee was disappointed by the
election of the widow to demand her dower in the land and was
compelled to pay her a yearly sum in lieu of dower, he not only
had the right to retain out of the amount by the will charged
upon the land, a sum sufficient to realize at six per cent interest
the amount of the yearly payment to the widow, but further
that the presumption of law was that the devisee had so re-
tained it.

When Philip Levengood died, in 1859, he left to survive him a
widow and child.  When the widow declined to take under the
will she became entitled, under the Acts of April 8, 1833, P. L.
249, and April 11, 1848, P. L. 536, to a life estate in one-third
of the lands of her deceased husband and one-third of the per-
sonal estate absolutely.  She took this not under the will, but
by title paramount thereto, as to her there was no will: Hoover
v. Landis, 76 Pa. 354; Cunningham's Estate, 137 Pa. 621.  The
widow having thus taken adversely to the will the part of
the estate to which she was by law entitled, the will operated
upon all that remained of the estate precisely as if the widow
had been dead: Coover's Appeal, 74 Pa.- 143; Ferguson's
Estate, 138 Pa. 208; Vance's Estate, 141 Pa. 201; Woodburn's
Estate, 151 Pa. 586.  The widow could, of course, take nothing
under the will, and the devises and bequests to her are a trust
in her, for the benefit of the disappointed devisees and legatees
to the amount of their interest therein: Sandoe's Appeal, 65
Pa. 314; Gallagher's Appeal, 87 Pa. 200; Young's Appeal,
108 Pa. 17; Evans' Estate, 150 Pa. 212; Armstrong v. Walker,
150 Pa. 585; Batione's Estate, 136 Pa. 307.  The part of the.
estate thus sequestrated to compensate disappointed legatees

consists of the rejected devises and bequests to the widow. The testator cannot be held to have died intestate as to the one-third of his real estate to the use of which during her life the widow is entitled: Sullivan v. Kieffer, 122 Pa. 135. Augustus W. Levengood took whatever title he acquired to this farm under the will of Philip Levengood; the only interest which he did not acquire under the will was the life estate of the widow, in the one-third, which she held by title adverse to the will. What he did take under the will was two-thirds of the land by absolute title in fee simple, and a vested remainder in the other one-third to take effect after the death of the widow. He was a disappointed devisee, to the extent of the life estate of the widow in one-third of the land. The sole legatee under the will, apart from the widow, was also disappointed, to the extent that the widow took one-third of the personal property absolutely. Applying to this case the principles settled by the decisions above cited, we have this result. The bequest to the widow of the interest on $1,000, charged upon the land, during widowhood, was to be sequestered to compensate the parties disappointed by the widow's election. The widow declined to accept the interest on that fund, during the period of her widowhood, and by her election imposed upon the land devised a charge greater than the annual interest upon the fund which she had declined. Augustus W. Levengood was, therefore, entitled to the income upon the $1,000 so long as the widow remained unmarried. That is the only fund out of which and the only extent to which he could be compensated for his disappointment as a devisee. The devise of the remainder in this fund, to take effect upon the remarriage of the widow, was specific, and Augustus W. Levengood was not entitled to compensation out of that fund. Augustus W. Levengood knew, at the time he filed his acceptance in writing of the devise, that he was taking the land subject to the right of the widow, and he in plain terms accepted "at the sum of four thousand dollars according to the provisions of the will of said deceased;" and to to that he added, "And I offer to pay Rachel Levengood the widow of said deceased, the sum of sixty-two dollars and thirty cents per annum during her natural life, which annual sum

shall be a lien on said real estate during her lifetime." There is here no mention of any charge for a principal sum, the annual interest upon which would be equal to the yearly payment to be made to the widow. There is nothing from which it could be inferred that the nature of the charge upon the land created by the will, the amount thereof, or the time at which or contingency upon which it should become absolutely payable was to be in any manner varied. The law does not favor the creation of liens or any essential change in the nature thereof by mere implication: Hiester v. Green, 48 Pa. 96; Strauss's Appeal, 49 Pa. 353. The agreement, as to the annual payments in lieu of dower, between Augustus W. Levengood and Rachel Levengood created a charge upon the land for the annual payments only; it contained nothing which could even remotely suggest that any principal sum was to continue a charge during the life of the widow and at her death be paid to the legatees under the will of Philip Levengood. The legatees under the will of Philip Levengood were not parties to that agreement, and even if the devisee and the widow had attempted to change the time at which or conditions upon which the legacy charged upon the land was to become payable they did not have the power to accomplish that result: Loomis's Appeal, 22 Pa. 312. The deed from Augustus W. Levengood to Mahlon Focht, for a part of the original tract, did make the part of the tract by that deed conveyed subject to a charge of $159.27 the interest thereof to be annually paid to Rachel Levengood, during her life, and after her death the principal to the legal heirs of Philip Levengood; but that deed contained nothing which implied that the amount so charged was a part of a larger amount charged upon the entire tract. So far as that deed indicates the specific amount thus charged upon the part conveyed embraced the whole charge to which the entire tract was then subject. The appellant does not claim under that deed; it conveyed no part of the land which he now owns. The legatees under the will of Philip Levengood, to whom the charge created by the will was payable, were not parties to that conveyance, and the covenants thereof could not have the effect of changing the nature of the lien which was by will created. These circumstances lead us to the conclusion

that the purchaser at the sheriff's sale was not by this deed, nor by the agreements hereinbefore referred to, visited with notice that the nature of the charge created by the will of Philip Levengood had been changed and that there had been fixed upon the land a lien of a character so tenacious that it would not be discharged by a judicial sale: Loomis's Appeal, 22 Pa. 312; Dickinson v. Beyer, 87 Pa. 274; Maul v. Rider, 59 Pa. 167. The accounts filed by the guardian of the daughter, Anna Maranda Levengood, merely tended to show that the entire amount of the $4,000 charged by the will of Philip Levengood upon the entire tract had not been paid prior to 1877, but they contain nothing which tended to show that the nature of that charge and the conditions under which it should become payable had been in any manner varied. We find nothing in any of the records offered in evidence which could by any reasonable implication be held to be notice to the purchaser at sheriff's sale that the nature of the charge as originally created by the will had been in any manner varied by any subsequent covenant between parties competent to contract with regard to the same. There never had been any proceedings in the orphans' court resulting in a marshaling of the assets of the estate of the decedent and a decree of the court that the devisee should be permitted to retain any part of the fund charged upon the land by the will, and pay the interest upon the fund so retained to the widow during her life and the principal to the legatees upon her death. No attempt was ever made to so secure this charge against the rights of purchasers or incumbrancers. The question in this case is not whether the devisee had paid the full amount of the purchase money. It is whether the charge for that purchase money was at the time of the sheriff's sale of such a nature that it was not by the sale discharged.

The mere election of the widow to take against the will did not entitle the devisee, after accepting the land as devised, to retain one-third of the amount which under the terms of the will he was required to pay. He also had the right of election, he could decline to accept the devise or he could accept it according to its terms. If he accepted he must comply with the conditions imposed by the testator. He could not change the

will any more than could the widow. Had the testator during his lifetime sold and conveyed, by title in fee simple, one-third of this tract of land, thus leaving only two-thirds of it when the will took effect, the devisee could not have accepted what remained of the farm and then absolutely refused to pay the full amount charged thereon. The only remedy for a devisee who is disappointed by the election of a widow not to take under the will is through an appeal to the equity powers of the court, to procure a marshaling of the assets, and the court may, upon considering all the provisions of the will and the entire assets of the estate, enter a decree which will protect and preserve the interests of all the legatees and devisees, and fix the conditions under which charges imposed by the will upon land devised shall be secured and paid. When this is not done the devisees must pay the charges to which the devises are by the will made subject, and the settlement of each devisee with the widow is a matter entirely outside the will. At law the devisee cannot accept the land and then refuse to pay the charge in the manner by the will required.

When this land was sold at sheriff's sale, in 1896, the charge created by the will of Philip Levengood had been for over thirty years ascertainable; for eighteen years there had been no uncertainty as to its amount or the person who was entitled to receive it, during all that period it was due; it was payable out of the proceeds of the sheriff's sale and was by that sale discharged.

The decree of the court below is reversed and the petition dismissed at cost of the appellee.